UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DESERT PALACE, INC., d/b/a CAESERS PALACE, a Nevada Corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>ANDREW P. MICHAEL, | Case No.: 2:16-cv-0462-JAD-GWF<br><br>**ORDER** |

This matter is before the Court on Plaintiff's Motion to Compel (ECF No. 44), filed on January 3, 2017. Instead of filing a response to Plaintiff's motion to compel, Defendant filed his Motion to Continue Filing Deadlines and Hearing Regarding Plaintiff's Motion to Compel (ECF No. 49) on January 8, 2017. Plaintiff filed its Opposition (ECF No. 53) on January 13, 2017 and Defendant filed his Reply (ECF No. 55) on January 18, 2017. The Court conducted a hearing in this matter on January 30, 2017.

**BACKGROUND AND DISCUSSION**

Plaintiff Desert Palace Inc., d/b/a Caesars Palace ("Caesars") filed this action in the Nevada District Court, Clark County, Nevada on June 25, 2015. Defendant Andrew Michael ("Michael") removed the action to federal court on March 3, 2016. Caesars alleges that Michael, a regular casino customer, executed credit applications seeking a credit line pursuant to which he would receive gaming chip advances up to a certain approved monetary limit. *Complaint* (ECF No. 1), ¶¶ 7, 8. The credit applications signed by Michael contained the following provisions: (a) "Before drawing on my line of credit, if granted, I agree to sign credit instruments (i.e., checks) in the amount of the draw;" (b) "I agree that each draw against my credit line is a separate advance of money by [Caesars];" (c) "If I receive an

advance before I execute a credit instrument, I promptly will sign a credit instrument in the amount of the advance;" (d) "I am aware that this application is required to be prepared by the Nevada State Gaming Control Board regulations of the State of Nevada, and I may be subject to civil or criminal liability if any material information provided by me is willfully false;" (e) "I agree that this application and all credit issued pursuant thereto will be governed, construed and interpreted pursuant to the laws of the State of Nevada and venue shall lie solely in that state;" and (f) "I agree that [Caesars] may litigate any dispute involving the credit line, the debt or the payee in any court, state or federal, in Nevada. I submit to the jurisdiction of any court, state or federal, in the state of Nevada." *Complaint* (ECF No. 1), ¶ 8.

According to Caesars:

> Although a credit instrument (also referred to as a *"marker"*) is generally signed contemporaneously when funds are advanced on credit to a casino patron, Nevada law and the regulations of the Nevada Gaming Commission promulgated thereunder also permit and authorize a licensee to advance funds on credit to a patron through the initial use of "lammers" a customary practice when a licensee allows a patron to "play on the rim" (also referred to as *"rim play"*). Rim play is generally a courtesy extended only to high level, ultra-VIP casino patrons.
>
> During rim play, a licensee uses "lammers" or "rim cards" to track advances made to a patron during play, while the patron is in action, thereby allowing the patron to game without interrupting play to obtain executed markers.

*Complaint* (ECF No. 1), ¶¶ 15-16.

Michael gambled at Caesars Palace on September 20-21, 2014, during which he received advances that exhausted his entire credit limit of $3 million. *Id.* at ¶¶ 19-21. After completing his play, Michael allegedly avoided Caesars' employees who attempted to have him execute a marker. Michael left Nevada and returned to London, England and has since refused to execute the marker. *Id.* at ¶¶ 22-40. Caesars alleges claims against Michael for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, specific performance, account stated, promissory/equitable estoppel, and declaratory relief. In his answer to the complaint, Michael denies that "Rim Debt" is valid or enforceable. *Answer* (ECF No. 5), ¶¶ 21-39. Michael also alleges that "[a]t the time of the alleged advances, [he] lacked the capacity to contract given Caesars consistent provision of alcohol throughout the period in question." *Id.* at pg. 12, Affirmative Defense No. 23. Michael also

asserts a counterclaim for $582,800 that Caesars allegedly owes to him.  Both parties have filed motions for summary judgment regarding the legal enforceability of Michael's $3 million gambling debt.

In its motion to compel, Caesars states that it noticed Defendant Michael's deposition to be taken on December 13, 2016 at Plaintiff's counsel's law office in Las Vegas, Nevada.  Caesars also noticed the depositions of non-parties Chris Michael, Elias Michael, Ian Simpkins and Kai Feller.  These individuals allegedly accompanied Defendant Michael during his visit to Caesars in September 2014 and were present when he gambled on September 21-22, 2014.  These witnesses apparently reside in England or Europe.  Caesars seeks their depositions in regard to Michael's affirmative defense that Caesars plied him with alcohol such that he was not legally competent to request advances on his credit limit.  Caesars served subpoenas for the non-party deponents on Michael's counsel who indicated that he was the contact person for these individuals.  Neither Defendant Michael or the witnesses appeared for their scheduled depositions.  Caesars is willing to take the witnesses' depositions by remote video conferencing so that they need not travel to the United States.  Caesars, however, seeks an order compelling Defendant Michael to appear in Las Vegas for his deposition.

Michael requests in his motion that Plaintiff's motion and its related briefing schedule, and the depositions be continued until the motions for summary judgment are decided "and the validity of this Court's jurisdiction over Plaintiff's action is determined." *Motion to Continue* (ECF No. 49), pg 6.  Defendant, in effect, moves for a stay of discovery pending a decision on the motions for summary judgment.

## DISCUSSION

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D.Nev. 2013) (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D.Nev. 2011).  "Courts in this District have formulated three requirements in determining whether to stay discovery pending resolution of a potentially dispositive motion; motions to stay discovery may be granted when: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a 'preliminary peek' at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a

1  claim for relief." *Id.; see also Jones v. Wirth*, 2016 WL 4994962, *3 (D.Nev. Sept. 16, 2016). In this
2  case, both parties have filed motions for summary judgment on the issue of whether Michael's $3
3  million gambling debt is legally enforceable under Nevada law. If Defendant Michael's motion is
4  granted, it would be dispositive of the case. The issue can be decided without additional discovery.

5       The Court has reviewed the parties' briefs on the summary judgment motions. Although
6  Defendant Michael casts the issue as jurisdictional, it is not jurisdictional in the sense of whether the
7  court has personal jurisdiction over the parties or whether the claims fall within federal subject matter
8  jurisdiction. Instead, Defendant contends that the court "lacks jurisdiction" because his alleged
9  gambling debt is legally unenforceable.

10       The Nevada Supreme Court traditionally followed the common law doctrine that a gaming debt
11  is not legally enforceable. *Sigel v. McEvoy*, 101 Nev. 623, 624, 707 P.2d 1145, 1145–46 (1985). The
12  Court noted that in 1983, the Nevada Legislature enacted NRS 463.361(1) "which provides in part that
13  'gaming debts not evidenced by a credit instrument are void and unenforceable and do not give rise to
14  any administrative or civil cause of action.' Thus, the legislature to some extent modified the common
15  law prohibition against enforcement of gaming debts." NRS 463.368(1) states that "[a] credit
16  instrument accepted on or after June 1, 1983, and the debt that the credit instrument represents are valid
17  and may enforceable by legal process." Subsection 2 further states that "[a] licensee . . . may accept an
18  incomplete credit instrument which: (a) Is signed by a patron; and (b) States the amount of the debt in
19  figures, and may complete the instrument as is necessary for the instrument to be presented for
20  payment." Subsection 3(b) states that a licensee "[m]ay accept a credit instrument either before, at the
21  time or after the patron incurs the debt. The credit instrument and the debt that the credit instrument
22  represents are enforceable without regard to whether the credit instrument was accepted before, at the
23  time or after the debt is incurred."

24       Although Caesars alleges that a gambling debt incurred during "rim play," such as occurred in
25  this case, is legally enforceable under Nevada law, it has not cited any statutory or regulatory provision
26  that expressly states that a gambling debt can be enforced against a casino patron in the absence of an
27
28

executed credit instrument or marker.[1] Nor does there appear to be any Nevada state or federal case so holding. The closest case cited by Caesars is *Morales v. Aria Resorts & Casino, LLC*, in which the patron incurred a $500,000 gambling debt and executed several casino markers equal to that debt. 995 F.Supp.2d 1176 (D.Nev. 2014). The court held that the casino could bring a civil action against the patron to recover the amount of the debt without presenting the markers to the designated banks for payment. *Id.* at 1181. The court stated:

> [M]arkers are merely instruments for collecting on a gambling debt, as distinct from the debt itself, and redeeming a marker is not the only means by which a gaming establishment may seek to collect on an outstanding debt. *See* N.R.S. § 463.368 (enforceability of markers under Nevada law is not dependent on presentation). Accordingly, Morales "defense" related to presentment does not raise a triable issue of fact. Nor does it preclude summary judgment in favor of Aria.

*Id.*

*Morales* does not hold, however, that a gambling debt is enforceable in the absence of any executed credit instrument.

Although Nevada has long since moved past the view that wagering and gaming contracts are inconsistent with the interests of the community and at variance with the laws of morality, *West Indies, Inc. v. First Nat. Bank of Nevada*, 67 Nev. 13, 214 P.2d 144, 147 (1950), it has not enacted a law making gambling debts enforceable in the absence of an executed credit instrument. Fairness may dictate that Defendant should pay his gambling debt to Caesars. There appears to be substantial doubt, however, whether that debt is legally enforceable.

Other circumstances also suggest that a stay of discovery pending a decision on the motions for summary judgment is appropriate. A stay of discovery in this case is not likely to result in substantial delay. There appears to be no genuine dispute that Michael executed the credit applications and that he gambled and lost the $3 million limit of his credit advance. To the extent there is any dispute on these issues, Caesars will be allowed to depose Michael if the alleged debt is legally enforceable. The depositions of Defendant's associates can also be taken during a relatively brief discovery period after

---

[1] A marker or credit instrument is defined in *Morales v. Aria Resorts & Casino, LLC*, 995 F.Supp.2d 1176, 1178 n. 2 (D.Nev. 2014).

the motions for summary judgment are decided.  If the foregoing discovery becomes necessary, the Court will likely require Defendant Michael to appear in the District of Nevada for his deposition absent proof that it will be unduly burdensome for him to appear in this district.  The Court will permit the non-party witnesses to be deposed by remote video-conferencing.  Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Continue Filing Deadlines and Hearing Regarding Plaintiff's Motion to Compel (ECF No. 49) is **granted**, and Plaintiff's Motion to Compel (ECF No. 44) is **denied**, without prejudice.

**IT IS FURTHER ORDERED** that discovery is stayed pending the decisions on Plaintiff's Motion for Partial Summary Judgment (ECF No. 23) and Defendant's Counter-Motion for Summary Judgment (ECF No. 40).  In the event the District Judge holds that the alleged gambling debt is legally enforceable, the parties shall file a status report and/or proposed discovery plan and scheduling order within fourteen (14) days of the Court's decision.  If necessary, Plaintiff may also renew its motion to compel.

DATED this 9th day of February, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge