# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Desert Palace, Inc., d/b/a Caesars Palace, | Case No.: 2:16-cv-00462-JAD-GWF |
| Plaintiff | **Order Overruling Defendant's Objections and Adopting Report and Recommendation** |
| v. | |
| Andrew P. Michael, | [ECF Nos. 124, 148, 152] |
| Defendant | |

This sanctions dispute arises from defendant Andrew Michael's failure to attend his own deposition twice, which prompted plaintiff Caesars Palace to move for monetary and claim-dispositive sanctions.[1] Magistrate Judge Foley granted the motion, ordered Michael to reimburse Caesars for the costs of the missed depositions, and recommends that facts necessary to prove Caesars's fraud claim against Michael be deemed established. Michael objects to that recommendation. He offers new evidence to explain why he missed his second deposition and contends that his failure to participate in this litigation has not been the result of willful noncompliance or bad faith. But because Michael's new evidence is not enough to stave off claim-dispositive sanctions, I overrule his objections and adopt Judge Foley's report and recommendation.

## Background

In September 2014, Caesars extended $3 million on credit to allow Michael to gamble at one of its casinos. Michael lost it all and has yet to repay that loan. Caesars initiated this action

---

[1] ECF No. 124.

to collect that debt. It alleges, among other things, that Michael committed fraud by intentionally misrepresenting his ability to repay that advance.[2]

When Michael failed to appear at his deposition noticed for December 2016, Caesars filed a motion to compel him to attend.[3] Judge Foley denied that motion pending resolution of Michael's summary-judgment motion.[4] Once I denied Michael's summary-judgment motion, discovery was reopened and Caesars again noticed Michael's deposition, this time for October 20, 2017.[5] The bulk of the topics Caesars was planning to depose Michael on related to its fraud claim against him.[6] In September, Michael filed a motion for a protective order asking that the deposition be vacated, re-noticed at a later date, and either moved to London or conducted via video conference because Michael was hospitalized "due to problems related to his kidneys."[7] Judge Foley denied the protective order because Michael's counsel could not produce any reliable evidence of Michael's illness.[8]

Michael didn't show up for this second deposition either, so Caesars filed a motion for sanctions for his failure to appear.[9] Caesars asked for both monetary sanctions and an order deeming admitted the essential facts necessary to support its fraud claim against Michael.[10]

---

[2] This is a simplification of the facts in this case, but it is all that is required to rule on Michael's objections to the magistrate judge's report and recommendation. A more robust discussion of the facts is contained in my previous summary-judgment order. *See* ECF No. 77.

[3] ECF No. 44.

[4] ECF Nos. 61.

[5] ECF Nos. 77, 87, 111.

[6] ECF No. 124 at 2.

[7] ECF No. 111 at 2–3.

[8] ECF No. 120.

[9] ECF No. 124.

[10] *Id.*

Judge Foley found that "Michael has consistently failed to abide by Court orders and participate in discovery" and granted that motion in its entirety.[11] Concluding that less-drastic sanctions would be toothless given Michael's repeated nose-thumbing, Judge Foley ordered Michael to pay monetary sanctions and recommends that I deem the fraud-related facts established and preclude Michael from introducing contradictory evidence.[12]

Michael objects to that recommendation.[13] He offers new evidence that in October 2017 he was "engaged in in-patient treatment for alcohol, drug, and gambling addiction[s]."[14] Michael's doctors confirm that he suffered from severe addictions for at least two years before he sought treatment and opine that he should not return to Las Vegas because he would face an increased likelihood of relapse here.[15] Michael states that he is still willing to be deposed in London or over videoconference, but he insists that he cannot return to Las Vegas because proximity to his vices may threaten his recovery.[16]

Michael agrees that monetary sanctions are warranted and contends that they alone are sufficient to punish him for his failure to participate in this litigation. He posits that noncompliance based on addiction—which is considered a disease by the American Medical Association and the American Society of Addiction Medicine—is not sufficiently willful or indicative of bad faith to support dispositive sanctions, so the claim-dispositive sanctions would

---

[11] ECF No. 148 at 4.
[12] *Id.*
[13] ECF No. 152.
[14] *Id.* at 2.
[15] *See* ECF No. 153 (under seal).
[16] ECF No. 152-1 at 5.

3

be too severe in light of this new evidence.[17] He also argues that it would be unfair to deem established some of the facts that Judge Foley recommends because he has evidence to refute them.

## Discussion

### A. Legal standards

A district court reviews objections to a magistrate judge's proposed findings and recommendations de novo.[18] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[19] "[A] district court has discretion, but is not required, to consider evidence present for the first time in a party's objection to a magistrate judge's recommendation."[20]

Federal Rule of Civil Procedure 37(d)(1) authorizes courts to sanction a party for failing to appear for his deposition. Those sanctions may include "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;" and (iii) ordering the disobedient party to pay the reasonable expenses, including attorney's fees, caused by the party's failure to appear.[21] The sanctions must bear a reasonable relationship to the subject of discovery that was frustrated by the sanctionable conduct[22] and "are appropriate only

---

[17] ECF No. 152 at 10–11.
[18] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003); L.R. IB 3-2(b).
[19] *Reyna-Tapia*, 328 F.3d at 1121–22; *see also* L.R. IB 3-2(b).
[20] *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000).
[21] *See* Fed. R. Civ. P. 37(b)(2)(A) and (d)(3).
[22] *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001), *cert. denied sub nom.*, *McLachlan v. Simon*, 536 U.S. 941 (2002).

in 'extreme circumstances' and where the violation is 'due to willfulness, bad faith, or fault of the party.'"[23] "Disobedient conduct not shown to be outside the litigant's control meets this standard."[24]

When deciding whether to grant a motion for sanctions for noncompliance with discovery, district courts consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions."[25] These five factors weigh in favor of the recommended sanction against Michael even with his newly offered evidence.

## B. Analysis

Michael's disregard for his litigation obligations and the court's orders has predominated this litigation. His bad-faith behavior started early in this case, when he failed to appear for his first deposition in December 2016. Michael notified Caesars that he wasn't attending the deposition the day before it was supposed to take place; he didn't provide a reason.[26]

Discovery was stayed until July 2017 pending rulings on potentially-dispositive summary judgment-motions.[27] As soon as the stay was lifted, Caesars again noticed Michael's deposition for October 20, 2017, and served him with additional discovery requests. Michael was a no-

---

[23] *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir.), *cert. denied*, 537 U.S. 1018 (2002) (citations omitted); *Computer Task Grp. Inc., v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (per curiam).

[24] *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006) (citations omitted).

[25] *Rio Props., Inc. v. Rio Int'l Linterlink*, 284 F.3d 1007, 1022 (9th Cir. 2002).

[26] *See* ECF No. 44.

[27] *See* ECF Nos. 61, 87.

show for this one, too. He did attempt to get out of it the right way—his counsel filed a motion for protective order. But when that relief was denied because Michael could not provide evidence to substantiate his excuse, he still didn't show. He also failed to respond to written discovery regarding his fraud claim, forcing Caesars to file a motion to compel.[28] And it appears that, throughout this case, Michael has consistently failed to communicate with his own counsel, leaving even him in the dark about his issues, and hampering his ability to respond to required discovery and court inquiries.[29]

Discovery obligations weren't the only thing Michael was ignoring, he was evading court orders, too. In June 2017, I granted partial summary judgment on Caesars's motion, found that Michael breached his contract with Caesars, and ordered him to execute the credit instrument he contractually agreed to sign for the $3 million loan.[30] After nine months and two failed attempts to get the Ninth Circuit to intervene and reverse that ruling, Michael still had not complied with my order.[31] So, in March 2018, I ordered him to show cause why he shouldn't be held in civil contempt of court because of his noncompliance.[32]

Three months after Michael failed to appear for his second deposition, he finally proffers evidence to explain why he didn't show. His affidavit explains the history of his addiction and treatment, he provides letters and affidavits from doctors who are responsible for his treatment,

---

[28] ECF No. 116.

[29] Indeed, Michael concedes that he was "out of touch with his counsel for extended periods of time in advance of [his] treatment, throughout that treatment, and sporadically thereafter." ECF No. 152 at 5; *see also*. Audio Recording on ECF No. 120.

[30] ECF No. 77.

[31] *See* ECF No. 163. Michael has responded to that order, and my decision remains pending. *See* ECF No. 164.

[32] *Id.*

and he supplies bank statements that he contends show that the facts Caesars asks to deem admitted are false.[33]

But Michael's proffer is too little, too late. That he was being treated for his addictions from early October 2017 to January 2018 explains why Michael was physically unable to attend his October 20th deposition,[34] but it doesn't explain why he failed to tell his counsel about his condition or treatment plans much earlier. It also doesn't excuse his avoidance of his first scheduled deposition in December 2016, and it does nothing to mitigate his refusal to comply with my summary-judgment order, which resulted in an order directing him to show cause why he should not be held in civil contempt of court.[35] While I am sympathetic to Michael's struggles, this belated evidence of them does not go far enough to excuse his habitual failures throughout this litigation to comply with his obligations as a litigant and as the subject of court orders. The problem was not Michael's addiction or that he was out of pocket last fall because of his treatment; it was his choosing to just ignore all of his obligations. And this history gives me doubt that allowing a do-over would produce different results.

This predicament that Michael finds himself in was easy to avoid. Had he simply communicated with his counsel and explained the bases for his inability to attend his depositions instead of just not showing up for them, the outcome of this sanctions motion likely would have been very different. But that bad faith so compounded his other rule- and order-flouting that I cannot conclude that mere monetary sanctions will foster the expeditious resolution of this case,

---

[33] *See* ECF Nos. 152, 153. Caesars argues that I should ignore Michael's new evidence because "exceptional circumstances" do not exist to consider it. ECF No. 157 at 9. But I don't need to find exceptional circumstances to consider new evidence—it is entirely within my discretion to do so or not. *Howell*, 231 F.3d at 621.

[34] ECF No. 152-1 at 5.

[35] ECF No. 163.

ensure that the court resumes its ability to manage the docket, or sufficiently remove the prejudice to Caesars by these delays and frustrations. Even with the new evidence of Michael's excuse for his failure to attend his deposition—which Judge Foley didn't have the benefit of when he recommended dispositive sanctions—the balance of factors still weighs in favor of accepting Judge Foley's recommendation.

Finally, Michael's contention that some facts that will be deemed admitted if I accept Judge Foley's recommendation are false is also unavailing. Being held to facts that would otherwise be subject to debate is the unfortunate but foreseeable risk of bad-faith litigation conduct. To avoid that risk, Michael needed only show up for his deposition or make timely and reasonable arrangements to reschedule it so he could go on record and tell his side of the story.

## Conclusion

Michael's persistent misconduct throughout this litigation—even with his new evidence—demonstrates that the sanctions that Magistrate Judge Foley recommends are warranted here. This is one of those extreme situations where the litigant's violations are the result of his own willfulness and bad faith. Accordingly, IT IS HEREBY ORDERED that Michael's objections **[ECF No. 152] are OVERRULED** and Magistrate Judge Foley's report and recommendation **[ECF No. 148]** granting Caesars's motion for sanctions [ECF No. 124] **is ACCEPTED AND ADOPTED**:

The following facts are deemed established in this action and will require no further proof:

1. Michael did not have sufficient funds to pay or satisfy a $3 million credit obligation, and he knew he did not have sufficient funds to do so on each of the following dates:

8

|     |     |                          |
| --- | --- | ------------------------ |
| 1   | a.  | January 12, 2014;        |
| 2   | b.  | September 12–14, 2014;   |
| 3   | c.  | September 20–22, 2014;   |
| 4   | d.  | June 22, 2017;           |
| 5   | e.  | June 28, 2017; and       |
| 6   | f.  | July 10, 2017.           |

2. Despite the knowledge that he did not have sufficient funds to satisfy a $3 million credit obligation, Michael induced Caesars to act by advancing him credit up to and including the sum of $3 million based upon his history of gambling with Caesars and the express provisions of the credit application.

3. Michael expressly promised that "Before drawing on my line of credit, if granted, I agree to sign credit instruments (i.e., checks) in the amount of the draw" and "If I receive an advance before I execute a credit instrument, I will promptly sign a credit instrument in the amount of the advance."

4. Michael had no intention to sign a credit instrument or to repay the advance when he accepted the $3 million credit advance from Caesars in September 2014.

5. Nevertheless, and despite this lack of promissory intent, Michael induced Caesars to act by advancing credit in the sum of the $3 million to Michael.

Michael is prohibited from introducing evidence to refute these established facts.

Finally, because this order impacts the arguments in Caesars's pending Motion for Summary Judgment on its Claim of Fraud [ECF No. 170] and Michael's opposition to that motion [ECF No. 171], IT IS HEREBY ORDERED that Michael will have until September 13, 2018, to file a supplemental opposition to that motion [ECF No. 170] of no more than eight

pages, and Caesars will have until September 24, 2018, to file a response of no more than eight pages to that supplement.

Dated: September 1, 2018

_____
U.S. District Judge Jennifer A. Dorsey