# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Desert Palace, Inc., | Case No.: 2:16-cv-00462-JAD-DJA |
| Plaintiff | **Order Denying Michael's Motion for Relief from Judgment, Granting Caesars's Renewed Motion for Partial Summary Judgment, Granting Caesars's Motion to Seal, and Closing this Case** |
| v. | |
| Andrew Michael, | |
| Defendant | [ECF Nos. 178, 181, 182] |

Defendant Andrew P. Michael was a regular gambler at Caesars Palace[1] in Las Vegas. During two visits to Caesars in September 2014, he experienced a remarkable turn of fortune. At the end of the first visit, Caesars held $582,000 on Michael's behalf in his front-money-deposit account. At the end of the second visit, Michael had exhausted $3 million in credit that Caesars extended to him under the terms of a credit agreement. Caesars sued to enforce Michael's promise in the credit agreement to sign a marker for the $3 million, and Michael counterclaimed for the $582,000 Caesars holds on his behalf. Caesars now argues that it is entitled to apply the $582,000 to the damages owed to it under the doctrines of setoff and recoupment.

I previously granted summary judgment in favor of Caesars on almost all of its claims, but I denied its motion for summary judgment on its setoff and recoupment affirmative defenses to Michael's counterclaims with leave to file a renewed motion.[2] Caesars filed a renewed motion, as well as a motion to seal an exhibit in support of it. Michael filed a motion for relief from my prior summary-judgment order under Rule 60(b). I grant Caesars's renewed motion

---

[1] Caesars's business entity is Desert Palace, Inc., d/b/a Caesars Palace. The parties and I have referred to it as "Caesars" throughout this case.

[2] ECF Nos. 77, 177.

because it is entitled to apply the $582,000 it owes to Michael against the damages in this case under the setoff doctrine. I treat Michael's motion for relief from my prior summary-judgment order as a motion for reconsideration because that order is not a final judgment, and I deny it because Michael has not identified clear error in my conclusion that Caesars is permitted to enforce its credit agreement with Michael or in my contempt finding. Finally, I grant Caesars's motion to seal.

## Discussion[3]

### I. Motion for relief from judgment [ECF No. 178]

Michael moves for relief from my order granting partial summary judgment in favor of Caesars under Rule 60(b) or certification of legal questions to the Supreme Court of Nevada.[4] Caesars responds that because I have not entered final judgment in this case, the standard for reconsideration of an interlocutory order applies and reconsideration is unwarranted under that standard.[5]

#### A. Relief from judgment or reconsideration

Rule 60(b) of the Federal Rules of Civil Procedure allows the court to "relieve a party . . . from a final judgment, order, or proceeding" for a variety of reasons, including if the judgment is void or the catchall "any other reason that justifies relief" applies.[6] The Ninth Circuit has cautioned, however, that "judgments are not often set aside" under the catchall, and it "should be

---

[3] The parties are familiar with the facts of this case, so I do not repeat them in detail here. I incorporate herein the facts detailed in my prior orders. *See* ECF Nos. 77, 174, 177.
[4] ECF No. 178.
[5] ECF No. 185.
[6] Fed. R. Civ. P. 60(b).

2

used sparingly as an equitable remedy to prevent manifest injustice."[7] However, "Rule 60(b) . . . applies only to motions attacking final, appealable orders . . . ."[8]

With respect to interlocutory orders, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient[,]" so long as it has jurisdiction.[9] A motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" by presenting "facts or law of a strongly convincing nature."[10] Reconsideration is appropriate if the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."[11] "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled."[12] And a motion for reconsideration may not be based on arguments or evidence that could have been raised previously.[13]

In my prior order, I explicitly noted that it was not a final judgment because I had yet to decide certain liability and damages issues.[14] Although Michael filed a notice of appeal, he

---

[7] *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 941 (9th Cir. 2007) (quotations omitted).

[8] *United States v. Martin*, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000); *see also United States v. McKean*, 44 F. App'x 854, 855 (9th Cir. 2002) (Rule 60(b) does not apply to motion attacking partial summary judgment order that determined liability but not damages).

[9] *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

[10] *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).

[11] *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[12] *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005).

[13] *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

[14] ECF No. 177 at 16 ("But I cannot yet enter final judgment because I haven't decided the setoff issue or what amount of punitive damages, if any, are warranted. And although Caesars has

voluntarily dismissed that appeal before the Ninth Circuit issued an order exercising jurisdiction, suggesting it was not appealable.[15] So, I apply the standard for reconsideration of an interlocutory order. Because Michael has not pointed to newly discovered evidence or an intervening change of law, I consider whether he has identified clear error in my prior order.

Michael first objects to my conclusion, originally reached in my order granting Caesars's first motions for summary judgment,[16] that Nevada's statutory scheme governing gaming debts does not bar a gaming licensee from enforcing an agreement to sign a credit instrument, despite Nevada's prohibition on enforcing the underlying debt itself.[17] Michael accuses me of "re-writ[ing]" Nevada Revised Statutes (NRS) § 463.361 to apply only to patrons,[18] but I came to that conclusion with the aid of Nevada case law, Nevada Gaming Control Board (NGCB) regulations, and the name of the statutory chapter where § 463.361 resides—"recovery of gaming debts by *patrons*."[19] In contrast, NRS § 463.368 allows gaming licensees to accept credit instruments "after the patron incurs the debt," thereby contemplating a result that Michael's interpretation would render meaningless.[20] Nor am I persuaded to alter my conclusion that Caesars may enforce its credit agreement with Michael.[21] So, having reviewed the statutory

---

calculated the amount in contractual interest that Michael owes, I will ask it to provide me an updated figure before entering final judgment.").

[15] ECF Nos. 179, 188.
[16] ECF No. 77.
[17] ECF No. 178 at 4–10.
[18] *Id.* at 4–5.
[19] ECF No. 77 at 7–8.
[20] Nev. Rev. Stat. § 463.368; ECF No. 77 at 8.
[21] ECF No. 77 at 9–11.

scheme, my prior orders, and the briefing on Michael's motion, I do not find clear error in my conclusion that Caesars is permitted to enforce the credit agreement under Nevada law.

Michael also objects to my grant of summary judgment in favor of Caesars on its fraud claim,[22] which was based on facts deemed established as a sanction for Michael's discovery violations.[23] Michael points to evidence that he could have—and should have—raised earlier.[24] Needless to say, my failure to consider evidence that was not presented to me or the magistrate judge assigned to this case does not constitute clear error. And a dispositive sanction was appropriate because Michael's claimed financial hardship and refusal to comply with prior court orders suggest that monetary sanctions would have been inadequate. I thus do not find clear error meriting reconsideration in my grant of summary judgment in favor of Caesars on its fraud claim.

Michael next argues that a contempt finding is unreasonable under these circumstances because the underlying order was illegitimate in two ways: (1) Nevada does not allow enforcement of gaming debts in a civil proceeding and (2) compliance with the Court's order to sign a credit instrument would violate NRS § 205.130 (the felony offense of issuance of a check or draft without sufficient money) because Michael has insufficient money to pay the debt.[25] I am not persuaded that compliance would subject Michael to criminal prosecution because the Supreme Court of Nevada has held that the "element of 'intent to defraud' under NRS [§] 205.130 may be negated by a showing that the casino had knowledge that the person obtaining the marker did not have sufficient funds to cover the marker *at the time it was*

---

[22] ECF No. 178 at 10–12.
[23] ECF No. 177 at 16–18.
[24] ECF No. 178 at 11.
[25] *Id.* at 12.

5

*executed.*²⁶ And I conclude above that my analysis of Nevada's statutory scheme does not constitute clear error.²⁷ So Michael has not identified clear error in my contempt finding. Having found no clear error in my prior order, I deny Michael's motion for reconsideration.

**B.     Certification to the Supreme Court of Nevada**

Michael also requests that I certify to the Supreme Court of Nevada three questions related to Nevada's statutory scheme governing gaming debts.²⁸ Caesars responds that Michael's request for certification is procedurally improper because he failed to file a separate motion, and it is substantively improper because he fails to identify compelling reasons for certification.²⁹

"Certification of open questions of state law to the state supreme court . . . rests in the sound discretion of the federal court."³⁰ "There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."³¹ The Ninth Circuit has held that a "party should not be allowed 'a second chance at victory' through certification by the appeals court after an adverse district court ruling,"³² and the same rationale disfavors certification on a motion for reconsideration.³³ Additionally, Local Rule IC 2-2(b) requires litigants to file a separate document for each type of relief requested.

---

²⁶ *Zahavi v. State*, 1343 P.3d 595, 600 (Nev. 2015) (emphasis added).

²⁷ I note that Caesars has withdrawn its request for contempt penalties. ECF No. 181 at 13.

²⁸ ECF No. 178 at 13–14.

²⁹ ECF No. 185 at 11–13.

³⁰ *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

³¹ *Id.*

³² *Id.* (quoting *In re Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984)).

³³ *See, e.g.*, *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1226 (D. Nev. 2008).

1       I deny Michael's request because he raises it only after an adverse ruling and long after Nevada-law issues emerged in this litigation. At this late stage of the litigation, certification to the Supreme Court of Nevada would be unduly disruptive because I am confident in my interpretation of Nevada law and it was Michael who removed this case to federal court. I also deny Michael's request because he failed to request it in a separate document, and I previously warned him of this requirement under the local rules.[34]

## II. Renewed motion for partial summary judgment [ECF No. 181]

      In my prior order, I granted leave for Caesars to renew its summary-judgment motion on its setoff and recoupment defenses to Michael's counterclaims for $582,800 of gambling winnings that Caesars holds on his behalf in a front-money-deposit account.[35] Caesars renews its motion, arguing that it can setoff the $582,800 against the judgment in this case.[36] Caesars thus asks the court to enter judgment in its favor in the amount of $4,955,936.20, representing Caesars's principal damages and contractual interest, less the setoff amount.[37] Michael argues that I may not address his counterclaim under my interpretation of Nevada's statutory scheme because he is a patron claiming gaming winnings not evidenced by a negotiable instrument.[38]

### A. Summary-judgment standard

      Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[34] ECF No. 177 at 19 n.84.
[35] *Id.* at 20.
[36] ECF No. 181.
[37] ECF No. 191 at 4.
[38] ECF No. 187 at 4–5.

7

matter of law."[39] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[40] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[41]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[42] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[43]

**B.  Setoff and recoupment**

"Setoff is a form of counterclaim [that] a defendant may urge by way of defense or to obtain a judgment for whatever balance is due."[44] The doctrine "allows mutually indebted parties to apply the debts of the other so that by mutual reduction everything but the difference is extinguished."[45] "In contrast to setoff, recoupment is the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim."[46]

---

[39] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[40] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[41] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[43] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

[44] *Aviation Ventures, Inc. v. Joan Morris, Inc.*, 110 P.3d 59, 63 (2005) (quotation omitted).

[45] *Id.* at 64 (quotation omitted).

[46] *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996).

8

Caesars offers front-money-deposit accounts, which provide a patron the ability to place cash and chips won during gaming play with the casino cage, to a limited number of patrons, including Michael.[47] Michael's account is managed under the terms of his credit agreement with Caesars, which provides that "[Michael] hereby authorize[s Caesars] in its sole discretion to apply any and all chips [Michael] may redeem first to the reduction of any outstanding credit balances, with the remainder, if any, to be returned to [Michael]."[48] Michael gambled at Caesars the weekend before the events underlying this lawsuit.[49] Over the course of the weekend, Michael deposited $582,800 in chips and cash in his front-money-deposit account.[50] Michael did not request the return of the money in his account at the end of the weekend, as he was scheduled to return to Caesars the following weekend.[51]

Caesars has shown that it and Michael are mutually indebted: it owes Michael the amount in his front-money-deposit account and Michael owes it $3 million dollars plus contractual interest. Because the two debts arise from different transactions under the credit agreement, the setoff doctrine applies.[52] Caesars thus shows an absence of a genuine issue of material fact on its setoff affirmative defense to Michael's counterclaims for the $582,800.

Michael does not respond with evidence of a genuine issue of fact. Instead, he argues that, under my interpretation of Nevada's statutory scheme governing gaming debts, I have no

---

[47] ECF No. 181-2 at ¶¶ 7–9.
[48] *Id.* at ¶¶ 5–6; ECF No. 65 at 2.
[49] ECF No. 181-2 at ¶¶ 12–15.
[50] *Id.* at ¶¶ 12–14; ECF No. 183.
[51] ECF No. 181-2 at ¶ 15.
[52] The parties do not address whether the two debts constitute different transactions. I find that the debts are separate transactions under the credit agreement. If the debts are instead viewed as one transaction under the credit agreement, I would find that the doctrine of recoupment applies.

authority to address his counterclaims and patrons must resort to the NGCB's administrative remedies to recover gaming debts not evidenced by a negotiable instrument.[53] Michael thus rehashes his objections to my analysis of Nevada's statutory scheme governing gaming debts, but to no avail. First, Michael himself filed the counterclaims in this court.[54] Second, Michael has not identified evidence of a genuine issue of material fact as to whether the sum in his front-money-deposit account constitutes a gaming debt under Nevada law.[55] And, in any event, Michael's objection is irrelevant because I utilize the common-law remedy of setoff—not Nevada statutory law—to apply the money that Caesars owes him against the sum that he owes Caesars. I thus grant partial summary judgment in favor of Caesars on its setoff defense to Michael's counterclaims.

I previously awarded $3 million in damages to Caesars plus contractual interest.[56] Caesars calculates contractual interest in the amount of $2,538,736.20 as of the date of its reply brief.[57] I direct the Clerk of Court to enter judgment in the amount of damages ($3 million) and contractual interest ($2,538,736.20) less the setoff ($582,800), for a total of $4,955,936.20.

In my prior summary-judgment order, I also granted leave for Caesars to brief penalties for my contempt finding and punitive damages for its fraud claims.[58] Caesars instead withdraws

---

[53] ECF No. 187 at 4.

[54] ECF No. 5.

[55] The evidence shows that Michael deposited large amounts of cash in the account, suggesting that it is not a gaming debt. ECF No. 181-2 at ¶¶ 13–14.

[56] ECF No. 177 at 20.

[57] ECF No. 191 at 5 (citing ECF No. 65 and calculating contractual interest accrued between September 21, 2014, and June 3, 2019).

[58] ECF No. 177 at 20–21.

its requests for punitive damages and contempt penalties.[59] Caesars also withdraws its remaining claims for relief.[60]

### III. Motion to seal [ECF No. 182]

Caesars moves to seal an exhibit in support of its partial summary-judgment motion, which consists of credit documents containing sensitive customer information and confidential business information.[61] Michael does not oppose the motion.

"The public has a 'general right to inspect and copy public records and documents including judicial records and documents.'"[62] "Although the common law right of access is not absolute, '[courts] start with a strong presumption in favor of access to court records.'"[63] "A party seeking to seal judicial records can overcome the strong presumption of access by providing 'sufficiently compelling reasons' that override the public policies favoring disclosure."[64] "When ruling on a motion to seal court records, the district court must balance the competing interests of the public and the party seeking to seal judicial records."[65] "To seal the records, the district court must articulate a factual basis for each compelling reason to seal[,] [which] must continue to exist to keep judicial records sealed."[66]

---

[59] ECF No. 181 at 13.

[60] *Id.*

[61] ECF No. 181.

[62] *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (quoting *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597 (1978)).

[63] *Id.* at 1119 (quoting *Foltz v. St. Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

[64] *Id.* (quoting *Foltz*, 331 F.3d at 1135).

[65] *Id.* (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

[66] *Id.* (citing *Kamakana*, 447 F.3d at 1179; *Foltz*, 331 F.3d at 1136).

Having reviewed the sealed exhibit in camera, I conclude that there are compelling reasons to seal this dispositive-motion exhibit in its entirety. The exhibit contains Caesars and Michael's confidential business and financial information. Public disclosure of the information contained in these exhibits could potentially damage the parties, and I find that compelling reasons exist to seal this information. Accordingly, I grant Michael's motion to seal.

## Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Michael's motion for relief from judgment **[ECF No. 178] is DENIED.**

**IT IS FURTHER ORDERED** that Caesars's motion to seal **[ECF No. 182] is GRANTED**. The Clerk of Court is directed to maintain the seal on ECF No. 183.

**IT IS FURTHER ORDERED** that Caesars's motion for partial summary judgment **[ECF No. 181] is GRANTED**. I grant summary judgment in favor of Caesars on its twelfth affirmative defense (setoff) to Michael's counterclaims. The Clerk of Court is directed to **ENTER FINAL JUDGMENT** in favor of Caesars and against Michael in the amount of $4,955,936.20 and **CLOSE THIS CASE**.

Dated: February 5, 2020

_____
U.S. District Judge Jennifer A. Dorsey